UNITED STATES *v.* BAILEY, GREEN & ELGER, INC. (No. 4409)[1]

United States Court of Customs and Patent Appeals, April 5, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument February 4, 1943, by Mr. Donohue and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, holding certain imported embossed buttons, composed of base metal, some plated with gold and some with silver, dutiable, as claimed by the importer, at 35 per centum ad valorem under the provision for "metal buttons embossed with a design, device, pattern, or lettering" contained in paragraph 349 of the Tariff Act of 1930, as amended by the trade agreement with the Czechoslovak Republic (T. D. 49458), rather than at 110 percentum ad valorem as "dress buttons," designed to be worn on apparel or carried on or about or attached to the person, composed of metal other than gold or platinum, under paragraph 1527 (c) (2) of that act, as assessed by the collector at the port of New York, which ad valorem duty, according to the report of the collector, was the equivalent of the rates of duty provided in that paragraph.

Paragraph 349 and the pertinent part of paragraph 1527 read as follows:

PAR. 349. Metal trouser buttons (except steel) and nickel bar buttons, one-twelfth of 1 cent per line per gross; steel trouser buttons, one-fourth of 1 cent per line per gross; buttons of metal, not specially provided for, three-fourths of 1 cent per line per gross; and in addition thereto, on all the foregoing, 15 per centum ad valorem; *metal buttons embossed with a design, device, pattern, or lettering,* 45 per centum ad valorem: *Provided,* That the term "line" as used in this paragraph shall mean the line button measure of one-fortieth of one inch. [Italics ours, except the word "Provided."]

PAR. 1527. * * * .

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and *dress buttons*, combs, match boxes, mesh bags, and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished: [Italics ours.]

* * * * * * *

(2) Composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate) or (if not composed in chief value of metal and if not dutiable under clause (1), of this subparagraph) set with and in chief value of precious or semiprecious stones, pearls, cameos, coral, amber, imitation precious or semiprecious stones, or imitation pearls, 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

It will be observed that paragraph 349, *supra,* provides, among other things, for metal buttons "embossed with a design, device, pattern, or lettering, 45 per centum ad valorem." That provision in the paragraph was amended by the trade agreement with the Czechoslovak Republic, dated March 15, 1938 (T. D. 49458), and the duty therein provided was changed from 45 per centum ad valorem to 35 per centum ad valorem.

The merchandise was imported on January 8, 1939, prior to the proclamation of the President (March 23, 1939) terminating the aforesaid trade agreement as of April 22, 1939 (T. D. 49824).

But two witnesses were called by the parties—Moe Head, by appellee, and William Bornstein, by appellant.

The witness Moe Head stated that he was employed as a buyer by the appellee company, and that he had been with that company for 19 years. He identified Exhibits 1 and 2, as representative of the merchandise in question. He then stated that he had been in the button business for from 15 to 20 years, and that he had seen buttons like those here involved in actual use 15 or 20 times a day. We quote from the testimony of the witness:

Q. Now, will you tell us what they are and how they are used?

A. Well, these are metal buttons. They are used down the front for buttoning purposes. *If it is a 2-piece coat and skirt they can be used right in front, also for buttoning.* That is about all I would know on these two.

Q. Do you know of any other use?

A. No. [Italics ours.]

On cross-examination the witness testified as follows:

X Q. Where did you ever see articles like exhibits 1 and 2 used?

A. Well, we happen to advertise in quite a few magazines like Harpers and so forth, and we have sketches sent to us of just the way the button is used.

X Q. Have you ever seen them used by a woman on her garment?

A. Well, *I would not say yes.*

X Q. So that you have never seen a woman wearing articles like exhibits 1 and 2?

A. *That particular button; no.*

X Q. So that you don't know whether articles like exhibits 1 and 2 are used for *trimming purposes or not, on garments?*

A. *Well, they may be.* [Italics ours.]

That testimony, together with Exhibits 1 and 2, consisting of two metal buttons which it is unnecessary to describe except to say that the face of each of the buttons is embossed with a design and that the back or underneath part of each is supplied with a small metal loop with which the button may be attached to a garment, is all of the pertinent evidence introduced by appellee.

Appellant's witness William Bornstein testified that he was an examiner of merchandise at the port of New York, and that the involved merchandise was classified under paragraph 1527, *supra*, as "metal dress buttons, composed of base metal, plated with gold or silver." On cross-examination he stated that his advisory classification of the involved articles as "dress buttons" under paragraph 1527, *supra*, was based upon the theory that *they were buttons for dresses*, and that he understood that the term "dress buttons" "applied to buttons worn on all manner of dress, whether for male or female."

It is conceded by counsel for appellee that the buttons are worth more than 20 cents per dozen pieces.

On the record presented, the trial court, in an opinion by Oliver, Presiding Judge, Walker, Judge, concurring, held, as hereinbefore noted, that the involved buttons were properly dutiable as metal buttons "embossed with a design, device, pattern, or lettering" at 35 per centum ad valorem under the provisions of paragraph 349, *supra*, as amended by the trade agreement with the Czechoslovak Republic, and, in so holding, stated that "The only testimony we have on the buttons here in question is that of witness Moe Head who stated these buttons are used for buttoning women's coats and skirts and that he knew of no other use." The court then observed that although the testimony of the witness was meager, it, nevertheless, was based upon years of experience in the selling of buttons and was not rebutted by testimony submitted by the Government. The court stated that it agreed with counsel for appellee that the provision in paragraph 349, *supra*, for "metal buttons embossed with a design, device, pattern, or lettering" is more specific for articles like those at bar than is the provision for "dress buttons" contained in paragraph 1527, *supra*.

It will be observed that the witness Moe Head testified on direct examination that the involved articles were used "down the front for buttoning purposes," and that if "it is a 2-piece coat and skirt they

can be used right in front, *also for buttoning.*" [Italics ours.] Although that testimony of the witness may not be free from ambiguity, it is, in our opinion, open to the construction that the buttons in question were designed to be used either as mere ornaments on women's dresses or for "buttoning purposes." The testimony of the witness on cross-examination, hereinbefore quoted, is consistent with the construction we have placed upon his direct testimony.

Considering the testimony of appellee's witness and the exhibits before us, which are representative of the involved buttons, we are of opinion that the buttons here in question were designed to be worn on apparel as incidental articles of mere personal comfort, convenience, or adornment, as well as to serve a useful purpose, and that they are covered by the provision for "dress buttons" contained in paragraph 1527, *supra.* As to the kind of articles intended by the Congress to be covered by provisions similar to those contained in paragraph 1527, *supra,* to wit, paragraph 448 of the Tariff Act of 1909 and paragraph 1428 of the Tariff Act of 1922, see *Lent v. United States,* 1 Ct. Cust. Appls. 542, T. D. 31549, *United States v. Horstmann Co.,* 14 Ct. Cust. Appls. 443, 445, T. D. 42079, and cases therein cited and reviewed, and *United States v. Gaunt & Sons et al.,* 15 Ct. Cust. Appls. 94, T. D. 42183.

In the case of *Lent v. United States, supra,* it was held that "fancy *vest* buttons made of brass, plated, some of which are studded with imitation precious stones" were dutiable as assessed by the collector at the port of New York as "dress buttons" under paragraph 448 of the Tariff Act of 1909. [Italics not quoted.] In so holding, the court, after describing the buttons there involved, stated: "From this inspection we must conclude that both samples are fancy buttons, which, while *serving a useful purpose* [a buttoning purpose], are designed to embellish the attire and to be worn upon the apparel principally for their ornamental effect." [Italics not quoted.] The court also stated, among other things, that the term "dress buttons" contained in paragraph 448 there under consideration meant "fancy buttons" which were "intended to adorn or ornament the dress"; that is, buttons "designed for something more than mere utility."

In the *Horstmann Co.* case, *supra,* it was held that certain "chains," which were essential parts of equipment for military uniforms and used to attach saber scabbards to officers' belts, were *not incidental articles of mere personal comfort, convenience, or adornment,* but were vocational articles, and that, although chains were *eo nomine* provided for in paragraph 1428 of the Tariff Act of 1922, the predecessor of paragraph 1527, *supra,* the chains there in question were not the kind of chains intended by the Congress to be covered by the provisions of paragraph 1428, citing the case of *United States v. Sussfeld, Lorsch & Co.,* 7 Ct. Cust. Appls. 126, T. D. 36454.

In the case of *United States* v. *Gaunt & Sons et al., supra*, it was held that certain gold-plated buttons and gold-plated badges, embossed with designs and required by military regulations of the United States to be worn on the uniforms of enlisted men and commissioned officers of the Army, Navy, and Marine Corps and designed for such use, although apparently covered by the provisions for "dress buttons" and "military ornaments" contained in paragraph 1428 of the Tariff Act of 1922, were not, in fact, intended to be included within those provisions, because they were not "incidental articles of mere personal comfort, convenience, or adornment."

Counsel for the Government contend that the legislative history indicates that it was the purpose of the Congress in providing in paragraph 427 of the Tariff Act of 1909 and paragraphs 349 of the Tariff Acts of 1922 and 1930 for "metal buttons embossed with a design, device, pattern, or lettering" to include therein only such "dress buttons" as are vocational in character; that is, buttons designed to be worn "on uniforms."

The Congress must have had in mind, in enacting the provision in paragraph 427 of the Tariff Act of 1909 and paragraphs 349 of the Tariff Acts of 1922 and 1930 for "metal buttons embossed with a design, device, pattern, or lettering," that such metal buttons were highly ornamental in character and were designed either for ornamental purposes or for both ornamental and utilitarian purposes.

The word "emboss" is defined by the lexicographers as follows:

2. To raise the surface of into bosses or protuberances; particularly, to ornament with raised work.

3. To raise in relief from a surface, as an ornament, a head on a coin, or the like.

\*       \*       \*       \*       \*       \*       \*

4. Hence, to adorn or embellish with rich ornamentation. (Webster's New International Dictionary.)

1. To cover, stud, or ornament with bosses, protuberances, or raised work; raise the surface of into bosses or ornaments in relief; hence, to decorate prominently or richly.

\*       \*       \*       \*       \*       \*       \*

2. To raise or represent in relief from or upon a surface, as in metal-work or embroidery, cause to stand out. (Funk & Wagnalls New Standard Dictionary.)

Furthermore, the Congress was aware of the fact, at the time of the enactment of paragraph 349 of the Tariff Act of 1930, that, although metal buttons embossed with a design, device, pattern, or lettering were used chiefly as "uniform buttons," they were also used for other purposes. See Summary of Tariff Information, 1929, Vol. 1, page 747. The Congress was also informed at that time that "metal buttons embossed with a design, device, pattern, or lettering" were used not only as vocational buttons, but also as "dress trimmings," "dress-trimming buttons," or "high-finish dress" buttons.

See Hearings before the Ways and Means Committee of the House of Representatives, Tariff Readjustment, 1929, Vol. 3, page 2150, and Hearings before the Committee on Finance, Vol. 1, pages 445, 446, 449, 450, 452, and 456. It further appears from the Summary of Tariff Information, 1929, Vol. 1, page 748, that the attention of the Congress was called to our decision in the case of *United States* v. *Gaunt & Sons et al., supra,* holding that uniform buttons embossed with a design, device, pattern, or lettering, valued at more than 20 cents per dozen pieces, were dutiable under the embossed-button provision contained in paragraph 349 of the Tariff Act of 1922. That decision was also called to the attention of the Congress in a "Memorandum of Court Decisions Affecting Tariff Act of 1922," prepared for use of the Committee on Ways and Means of the House of Representatives and published by that committee as a public document in 1929 during the revision of the Tariff Act of 1922. On page 20 of that document it was suggested that, if it was deemed advisable, the provision in paragraph 349 of the Tariff Act of 1922 for "metal buttons embossed with a design, device, pattern, or lettering" might be amended so as to cover only such embossed metal buttons *as were valued at not more than 20 cents per dozen pieces.* The Congress, however, did not adopt the suggested amendment, and the provision was reenacted without change as a part of paragraph 349 of the Tariff Act of 1930.

We are in agreement with counsel for the Government that the legislative history of the provision for "metal buttons embossed with a design, device, pattern, or lettering," which provision first appeared in paragraph 427 of the Tariff Act of 1909, was omitted from the Tariff Act of 1913, was incorporated as a part of paragraph 349 of the Tariff Act of 1922 and was reenacted as a part of paragraph 349 of the Tariff Act of 1930, indicates that the Congress intended that *dress buttons* embossed with a design, device, pattern, or lettering, designed to be worn on uniforms of the armed forces of the United States— so-called "vocational buttons"—whether or not valued at more than 20 cents per dozen pieces, should be dutiable under that provision. However, we find nothing either in the provision itself or in its legislative history to warrant a holding that the Congress intended to limit it to uniform buttons or so-called "vocational buttons." Had the Congress so intended, it would have been a simple matter for it to have said so. That it did not do. On the contrary, the provision, as enacted by the Congress, covers all metal dress buttons of a particular class; that is, all metal buttons "embossed with a *design, device, pattern, or lettering,*" whether or not valued at more than 20 cents per dozen pieces. [Italics ours.]

Counsel for the Government also contend that, as it was held in the case of *Meadows & Co.* v. *United States,* T. D. 38685, 39 Treas.

Dec. 238, that highly ornamental embossed gold-plated metal buttons, which were designed to be worn on Army, Navy, and Marine Corps uniforms, were dutiable as "dress buttons" under paragraph 356 of the Tariff Act of 1913 (the predecessor of paragraph 1428 of the Tariff Act of 1922, which, so far as the issues here are concerned, was substantially the same as paragraph 1527 of the Tariff Act of 1930), rather than as "metal buttons" not specially provided for under paragraph 151 of that act, *and as the Tariff Act of 1913 did not contain a provision for* "metal buttons embossed with a design, device, pattern, or lettering," it was the evident purpose of the Congress to "take such articles out of the" provisions for "dress buttons" and "military ornaments" contained in paragraph 1428 of the Tariff Act of 1922, and provide for them at a lower rate of duty under the provision in paragraph 349 of that act for "metal buttons embossed with a design, device, pattern, or lettering," which provision is identical with the provision here involved, and that it must be presumed that only such *dress buttons* as are *vocational* in character were intended by the Congress to be covered by that provision.

If, as argued by counsel for the Government, it was the purpose of the Congress, because of the decision in the *Meadows & Co.* case, *supra*, to carve out of the provision for "dress buttons," contained in paragraph 1428 of the act of 1922, all so-called "vocational buttons," *valued at more* than 20 cents per dozen pieces, and provide for such buttons under the provision for "metal buttons embossed with a design, device, pattern, or lettering," contained in paragraph 349 of that act, it must have been the intention of the Congress, in view of the language of the latter provision, to carve out of the provision for "dress buttons," contained in paragraph 1428, *all* metal dress buttons of a particular class, that is, all metal buttons "embossed with a design, device, pattern, or lettering," valued at more than 20 cents per dozen pieces, and make all such embossed buttons dutiable at the same rate of duty under paragraph 349.

As the Congress was fully informed at the time of the enactment of paragraph 349 of the Tariff Act of 1930 that metal buttons embossed with a *design, device, pattern,* or *lettering* were ornamental in character, that they were dress buttons, and that they belonged to a particular class of dress buttons, and as it refused to accept the suggested amendment, as hereinbefore stated, that the provision for metal buttons "embossed with a design, device, pattern, or lettering" be limited to such embossed buttons as were valued at not more than 20 cents per dozen pieces, we are of opinion that the Congress intended that embossed dress buttons of the kind here involved should be dutiable under that provision. Having reached that conclusion, it is unnecessary that we discuss other matters presented in the briefs of counsel for the Government.

For the reasons stated, the judgment is *affirmed*.